IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Otis Lynn Short, | ) |
| | ) |
| | ) Civil Action No. 8:05-2915-GRA-BHH |
| Petitioner, | ) |
| | ) |
| v. | ) **ORDER AND REPORT OF** |
| | ) **MAGISTRATE JUDGE** |
| | ) |
| Warden Willie Eagleton, | ) |
| Henry McMaster, | ) |
| Attorney General of the | ) |
| State of South Carolina, | ) |
| | ) |
| Respondents. | ) |
| | ) |

The plaintiff, a state prisoner, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. This matter is before the Court on the respondents' motion to dismiss or, alternatively, for summary judgment[1] and the petitioner's motion to appoint counsel.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on October 12, 2005. On February 6, 2006, the respondents filed a motion for summary judgment. By order filed February 7,

---

[1]Because the parties submitted, and the court considered, matters outside of the complaint, the respondents' motion has been treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .").

2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On March 9, 2006, the petitioner filed a response.

## FACTS PRESENTED

The petitioner is currently a state prisoner being housed in Evans Correctional Institution. On April 20, 1990, the petitioner was convicted of assault with intent to kill ("AWIK") in South Carolina. (Def. Mem. Supp. Summ. J. Ex. 3.) The petitioner was sentenced to ten (10) years to run consecutively to a North Carolina sentence which the petitioner was already serving. (Def. Mem. Supp. Summ. J. Exs. 4 & 5.) The petitioner filed a direct appeal which the South Carolina Supreme Court dismissed. *State v. Short*, Memo Op. No. 91-MO-174 (June 24, 1991). The petitioner did not seek post-conviction relief.

Following the petitioner's conviction, the petitioner continued serving his North Carolina sentence and a South Carolina detainer was lodged with the North Carolina authorities. (Def. Mem. Supp. Summ. J. Ex. 9.) On June 25, 1997, while the petitioner was still serving his North Carolina sentence, the South Carolina Department of Corrections ("SCDC") asked the North Carolina correctional authorities to remove the South Carolina detainer because "this inmate [had] expired his sentence of 10 years on 90-GS-11-394 commitment." (Def. Mem. Supp. Summ. J. Ex. 10.)

On August 16, 2004, the petitioner was released from the North Carolina prison. (Def. Mem. Supp. Summ. J. Ex. 13.) Afterwards a North Carolina law enforcement officer saw the petitioner and contacted the Cherokee County Solicitor's Office to inquire about the petitioner's South Carolina sentence. As a result, the Cherokee County Clerk of Court's office issued a bench warrant on October 22, 2004. (Def. Mem. Supp. Summ. J. Ex. 15.)

On January 20, 2005, a North Carolina magistrate issued an Order for Fugitive and the petitioner was arrested by the North Carolina authorities.[2] (Def. Mem. Supp. Summ. J. Exs. 14 &19.) The SCDC sent a notice to the Clerk of Court's Office in Gaston County, North Carolina, explaining that the removal of the detainer had been an error and the petitioner still had a 10 year South Carolina sentence to serve. (Def. Mem. Supp. Summ. J. Ex. 16.) On March 1, 2005, the petitioner was taken into custody by South Carolina authorities and placed in the SCDC system to begin serving his 10-year South Carolina sentence. (Def. Mem. Supp. Summ. J. Exs. 19 & 20.)

## APPLICABLE LAW

### SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

---

[2] At the request of South Carolina authorities the North Carolina authorities later dismissed the fugitive warrant. (Def. Mem. Supp. Summ. J. Ex. 21.)

3

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of it existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise,

4

conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## **DISCUSSION**

Essentially, the petitioner is contending that he is erroneously serving a 10-year sentence which has expired. Additionally, the petitioner raises numerous issues relating to his 1990 trial which resulted in his conviction for AWIK.[3] However, these issues have nothing to do with the petitioner's re-incarceration following his release from prison in North Carolina and are clearly time-barred. Under 28 U.S.C. § 2244 (d)(1), a one-year limitations period applies to the filing of § 2254 petitions. The statutory period is tolled during the pendency of any properly filed state collateral review proceedings. 28 U.S.C. § 2244 (d)(2); *Artuz v. Bennett*, 531 U.S. 4, 8-9 (2000). The petitioner's conviction was affirmed on direct appeal in 1991. *See State v. Short*, Memo. Op. No. 91-MO-174 (June 24, 1991). The petitioner did not file for post-conviction relief. Because the petitioner's conviction became final before the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"), the one-year limitations period commenced on April 24, 1996. *Harris v. Hutchinson*, 209 F.3d 325, 327-28 (4th Cir. 2004). Accordingly, the petitioner had until April 24, 1997, to file a habeas

---

[3] Specifically, in Ground One, the petitioner alleges he is innocent of the crime and in Ground Four, the petitioner challenges his indictment.

action raising issues relating to his 1991 conviction. Accordingly, the petitioner's issues relating to his original trial should be dismissed.

The petitioner's remaining claims relating to the cancellation of the South Carolina detainer and the petitioner's subsequent re-incarceration in South Carolina could be brought in a habeas petition under 28 U.S.C. § 2241. Because the court has jurisdiction over the claim regardless of whether it is brought pursuant to § 2254 or § 2241, the court will construe petitioner's remaining claim as one filed under § 2241.

The Fourth Circuit's decision in *Hawkins v. Freeman*, 195 F.3d 732 (4th Cir.1999), is directly on point and guides this court's analysis of the petitioner's due process claim. In *Hawkins*, the North Carolina Parole Commission erroneously granted parole to Hawkins, who was not eligible for parole. Twenty months later, the parole commission discovered its error and revoked Hawkins' parole. Hawkins sought habeas relief alleging that the revocation of his parole and his reincarceration violated his substantive due process rights. The Fourth Circuit sitting en banc held the petitioner had no fundamental liberty interest in retaining his freedom, which was granted in error, and his reimprisonment was not so outrageous as to shock the conscience.

The Fourth Circuit made a distinction between challenges to executive decisions and challenges to legislative decisions. *Id.* at 738-39. "In executive act cases, the issue of fatal arbitrariness should be addressed as a 'threshold question,' asking whether the challenged conduct was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id.* at 738 (*quoting County of Sacramento v. Lewis*, 523

U.S. 833 (1998)). The Court held an executive act can violate substantive due process only when the act shocks the conscience. If an executive act shocks the conscience, then the "inquiry must turn to the nature of the asserted interest, hence to the level of protection to which it is entitled." *Id*.

The Court held that a relatively high degree of culpability is required to shock the conscience in this context of delayed incarceration. As the Court observed, "erroneous release (and delayed incarceration) of prisoners is a surprisingly widespread and recurring phenomenon in both state and federal systems." 195 F.3d at 742 & n. 3. More importantly, the Court noted that in such cases, "the routine, seemingly invariable, executive practice has been to incarcerate, rejecting any claim of entitlement to freedom." *Id*. at 743. In light of this history, the Court held that "[t]o keep things in constitutional proportion, [it] would have to see . . . 'a mindless abuse of power,' or a deliberate exercise of power 'as an instrument of oppression,' or power exercised 'without any reasonable justification in the service of a legitimate governmental objective,'" before delayed incarceration would shock the conscience. *Id*. at 746 (*quoting Collins v. Harker Heights*, 503 U.S. 115, 126 (1992) and *Lewis*, 523 U.S. at 846).

The Court also analyzed the petitioner's re-incarceration as a legislative decision based upon the Parole Commission's assertions at oral argument that the law required the revocation of the petitioner's parole and the act was not discretionary. As a challenge to a legislative enactment, the Court considered whether the alleged violation was one of "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's

history and tradition." *Hawkins*, 195 F.3d at 747 (*citing Washington v. Glucksberg*, 521 U.S. 702, 720-721 (1997)).

The Court found no fundamental liberty interest to remain free on erroneously granted parole even when the parolee did contribute or know the error and has remained on good behavior. *Id*. at 747.  The Court then stated that without a fundamental interest involved, the legislation must only be rationally related to survive judicial review.  The Court concluded that "[g]iven the obvious state interest involved in reimprisoning any erroneously released convict, legislation requiring it . . . clearly survives that level of review."  *Id*. at 748.

In *Hawkins*, the Court also specifically rejected the waiver of jurisdiction theory which has been utilized by a few jurisdictions to find due process violations in re-imprisonment of an erroneously released prisoner. *Id*. at 759; *see, e.g., Shields v. Beto*, 370 F.2d 1003,  (5th Cir. 1967)(holding a government may waive its jurisdiction by a prolonged failure to incarcerate a convict who "owes it time"); and *Piper v. Estelle*, 485 F.2d 245 (5th Cir. 1973)(emphasizing that to apply this waiver, the government's inaction must be so grossly negligent or affirmatively wrong so as to be unequivocally inconsistent with the fundamentals of liberty).

The petitioner also suggests that principles of equitable estoppel preclude the respondents from now incarcerating him on the 1991 sentence.  However, as a federal court sitting in habeas, this Court is limited to granting relief based on violations of the Constitution, treaties and laws of the United States. *See* 28 U.S.C. § 2241(c); *Hawkins*,

195 F.3d at 748-50 (rejecting inmate's demand for habeas relief based on equitable principles). As the Court noted in *Hawkins*, recourse, if any, must be found by courts applying state common law and equitable principles, i.e. state courts. *Id*. In conclusion, the SCDC did not violate the petitioner's constitutional rights by requiring him to serve his South Carolina sentence. *Id.*

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the respondents' Motion for Summary Judgment be GRANTED and the petitioner's habeas petition be DISMISSED with prejudice. For those same reasons as stated in the Court's February 24, 2006 Order, it is ORDERED that the plaintiff's pending motion to appoint counsel is DENIED.

IT IS SO ORDERED AND RECOMMENDED.

_____
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

July 25, 2006
Greenville, South Carolina